**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MINA DURAKOVIC,**

                             **Plaintiff,**

                    **v.**                                            **3:12-CV-6
                                                                             (FJS)**

**CAROLYN W. COLVIN, Acting Commissioner
of Social Security,**

                             **Defendant.**
_____

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **HINMAN HOWARD & KATTELL, LLP**<br>700 Security Mutual Building<br>80 Exchange Street<br>P.O. Box 5250<br>Binghamton, New York 13902-5250<br>Attorneys for Plaintiff | **JACQUELINE A. BAIN, ESQ.** |
| **SOCIAL SECURITY ADMINISTRATION<br>OFFICE OF REGIONAL GENERAL<br>COUNSEL - REGION II**<br>26 Federal Plaza - Room 3904<br>New York, New York 10278<br>Attorneys for Defendant | **JEREMY A. LINDEN, ESQ.** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Currently before the Court are the parties' cross-motions for judgment on the pleadings.

*See* Dkt. Nos. 8,10.

### II. BACKGROUND

On February 24, 2010, Plaintiff filed an application for Supplemental Security Income benefits and a period of disability and disability insurance under Title XVI and Title II of the Social Security Act, respectively. *See* Dkt. No. 6, Administrative Record ("AR") at 123-35. The Social Security Administration denied these applications by Notice of Disapproved Claim, dated April 15, 2010. *See id.* at 45-46, 48-53. On April 28, 2010, Plaintiff filed a timely request for a hearing before an Administrative Law Judge to challenge the denial. *See id.* at 54-55.

On March 9, 2011, Plaintiff appeared in Binghamton, New York, for a hearing via video conferencing before Administrative Law Judge Thomas B. Tielens ("ALJ"), who conducted the hearing in Syracuse, New York. *See id.* at 11, 29. Also present were Plaintiff's attorney, Eugene Faughnan, Mr. Filan, an interpreter, and Lorraine Perez, a hearing monitor. *See id.* at 29. By decision dated May 29, 2011, the ALJ denied Plaintiff's applications for a period of disability, disability insurance, and Supplemental Security Income benefits. *See id.* at 8-26.

In reaching his decision, the ALJ made the following findings.

> 1. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2. Plaintiff had not engaged in substantial gainful activity since October 21, 2008, the alleged onset date.
>
> 3. Plaintiff had the following severe impairments: chronic right knee pain s/p arthroscopy; carpal tunnel syndrome of the left wrist; and chronic left shoulder pain s/p injury.
>
> 4. Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> 5. Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with the exception of occasional overhead reaching with the left

> upper extremity.
>
> 6. Plaintiff could not perform her past relevant work as a machine operator.
>
> 7. Plaintiff was born on October 17, 1971, and was thirty-seven years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
>
> 8. Plaintiff has a limited education and is able to communicate in English.
>
> 9. Transferability of job skills is not an issue in this case because Plaintiff's past relevant work is unskilled.
>
> 10. Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

*See* AR at 13-19.

Based on these findings, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 21, 2008, through May 19, 2011, the date of the ALJ's decision. *See* AR at 19-20.

By letter dated July 19, 2011, Plaintiff made a timely request to the Appeals Council of the Social Security Administration to review the ALJ's decision. *See id.* at 220-29. By Notice of Appeals Council Action, dated November 4, 2011, the Appeals Council denied Plaintiff's request for review. *See id.* at 1-6.

Having exhausted her administrative remedies, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), seeking review of Defendant's final decision. *See* Dkt. No. 1. In support of her motion, Plaintiff argued that the ALJ failed to develop the administrative record and that this constituted reversible error. *See* Dkt. No. 8 at 7-8 (citations omitted). Specifically, Plaintiff asserted that the ALJ had failed to request opinions regarding

her RFC from treating sources. *See id.* at 8. Furthermore, she contended that the ALJ had summarily dismissed the opinion of Dr. Ellison, as well as the opinions of the independent medical examiners for her worker's compensation carrier. *See id.*

## III. DISCUSSION

**A.      Standard of review**

### *1. Correct legal principles and substantial evidence*

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). In reviewing an ALJ's decision, the court employs a two-prong test. First, the court must decide if the ALJ applied the correct legal principles. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) (citations omitted); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation and other citation omitted).

The court must determine whether the ALJ applied the correct legal standards because

> [w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.

*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

Accordingly, the court will not uphold an ALJ's decision if it is based on an erroneous view of the law. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983).

If the court determines that the ALJ applied the correct legal principles, the court must

then decide whether "substantial evidence" supports the ALJ's findings. *See Johnson*, 817 F.2d at 985 (citation omitted); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" is evidence that amounts to "'more than a mere scintilla,'" defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). Where evidence is deemed susceptible to more than one rational interpretation, the court must uphold the ALJ's conclusion. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) (citations omitted). If there is substantial evidence to support the ALJ's findings, the court must sustain those findings "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citations omitted); *see also Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982) (citations omitted). In other words, the court must afford the ALJ's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

### *2. Five-step determination of disability*

To be eligible for benefits, a claimant must show that she suffers from a disability within the meaning of the Act. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A). In addition, a claimant's

> [p]hysical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . .

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In evaluating disability claims, the ALJ follows a five-step sequential evaluation process:

> First, the [ALJ] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [ALJ] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [ALJ] will consider him disabled without considering vocational factors such as age, education, and work experience[.] . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [ALJ] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 20 C.F.R. §§ 404.1520, 416.920. "[T]he claimant bears the burden of proving disability at the first four steps." *Berry*, 675 F.2d at 467. If the claimant meets his burden, then the Commissioner has the burden of proof at the fifth step. *See id.*

**B.      Whether the ALJ failed to develop the record**

In light of the remedial purpose underlying the Social Security Act and the non-adversarial nature of the administrative proceedings, an ALJ is under an obligation not only to develop a claimant's complete medical history for at least twelve months prior to the filing of an application for benefits, "but also to gather such information for a longer period if there [is] reason to believe that the information [is] necessary to reach a decision." *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998) (citing 42 U.S.C. § 423(d)(5)(B) (as incorporated by 42 U.S.C. § 1382c(a)(3)(G)); 20 C.F.R. § 416.912(d)); *see also Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (citations omitted).  "Accordingly, 'an ALJ may not rely, as factfinders in adversarial proceedings customarily do, on the *absence* of probative evidence supporting the opinions of a claimant's expert, without making an affirmative effort to fill any gaps in the record before him.'" *Sanchez v. Barnhart*, 329 F. Supp. 2d 445, 450 (S.D.N.Y. 2004) (quoting *Thomas*, 2002 WL 31433606, at *4).

In furtherance of his duty to develop the record, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to permit a reasoned disability determination and additional information is needed to resolve the question. *See Crysler v. Astrue*, 563 F. Supp. 2d 418, 432 (N.D.N.Y. 2008) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)).  This affirmative obligation is present even when counsel represents the claimant.  *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47) (citing *Pratts*, 94 F.3d at 37).  Ultimately, "'[i]t is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004) (quotation omitted).

Nonetheless, the affirmative duty imposed on an ALJ to develop an administrative record fully is not without limits. *See Miller v. Astrue*, No. 7:11-cv-631, 2012 WL 3061949, *3 (N.D.N.Y. July 26, 2012) (citing *Guile v. Barnhart*, No. 5:07-cv-259, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010)). The ALJ's duty to make every reasonable effort does not require him "to obtain every medical file from every medical source the claimant has seen," but rather, he "must request additional evidence if the administrative record does not contain sufficient evidence to make a fair determination[.]" *Ubiles v. Astrue*, No. 11-CV-6340T, 2012 WL 2572772, *10 (W.D.N.Y. July 2, 2012) (citing *Perez v. Chater*, 77 F.3d 41, 47-48 (2d Cir. 1996)); *see also Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 345 n.7 (E.D.N.Y. 2010). The duty to re-contact treating medical sources to develop a record fully arises only when the ALJ cannot decide the issue of disability based on the existing evidence. *See Rosa*, 168 F.3d at 79 n.5 (citing *Perez*, 77 F.3d at 48).

A review of the record in this case demonstrates that the ALJ adequately developed the administrative record. Although Plaintiff contends that the ALJ was required to seek opinions regarding Plaintiff's RFC assessment from treating sources, *see* Dkt. No. 8, Plaintiff's Brief at 8, there was sufficient information in the record for the ALJ to make a reasonable determination of disability. Specifically, the ALJ relied on the medical information that Dr. Goodman, Dr. Putcha, and Dr. Soden-Serjanej supplied. Dr. Goodman opined that Plaintiff had a partial moderate to marked disability but could return to a sedentary or very light type job. *See* AR at 287-88. However, Dr. Goodman also noted that Plaintiff should avoid any type of lifting or raising her arm above shoulder-level and should perform no repetitive or forceful motion involving any part of the upper left extremity. *See id.* at 287.

In addition, Dr. Putcha opined that Plaintiff might be able to do some other type of work with limited use of the left arm and hand. *See id.* at 371. Finally, Dr. Soden-Serjanej opined that Plaintiff had mild limitations to using her left arm for carrying, lifting, and overhead activities. *See id.* at 339-40. Additionally, she observed no other limitations with Plaintiff's lower extremities. *See id.* at 340.[1]

The ALJ also took affirmative measures to develop the record prior to the administrative hearing and during the course of Plaintiff's testimony. On December 10, 2010, the ALJ sent Plaintiff and her counsel a letter stating that they could provide additional evidence and that the ALJ could issue a subpoena if a person had evidence or information that Plaintiff reasonably needed to present her case in full. *See* AR at 81-82. Plaintiff and her counsel acknowledged receipt of the letter but did not request that the ALJ issue any subpoenas. *See id.* at 96-98. The ALJ also requested that Plaintiff's counsel obtain updated records from treating orthopedic surgeon Lawrence Weisner, D.O., and from Plaintiff's physical therapy provider. *See id.* at 41-42. On March 28-29, 2011, Plaintiff's counsel submitted additional records from Dr. Weisner, Dr. Ellison, and physical therapy reports. *See id.* at 218-19, 398-428. This was all of the evidence that Plaintiff intended to submit. *See id.* at 219. Since there were no obvious gaps in the records that Plaintiff's treating physicians provided, the ALJ was not required to re-contact them. *See Rosa*, 168 F.3d at 79 n.5 (citing *Perez*, 77 F.3d at 48).

For all of the above-stated reasons, the Court finds that the ALJ adequately developed the administrative record.

---

[1] Although Dr. Soden-Serjanej was a state consultative examiner, her opinion can constitute substantial evidence. *See Monguer v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983); SSR 96-6p, 1996 WL 374180, *1-*2 (July 2, 1996).

**C.    Whether the ALJ properly evaluated the medical evidence in determining Plaintiff's RFC**

A claimant's RFC represents a finding of the range of tasks she is capable of performing notwithstanding the impairments at issue. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptoms, including pain, and other limitations that could interfere with work activities on a regular and continuing basis. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing [20 C.F.R.] §§ 404.1545, 416.945). To ascertain a claimant's RFC, an ALJ must assess her exertional capabilities, addressing her ability to sit, stand, walk, lift, carry, push and pull. *See* 20 C.F.R. § 404.1545(b). The ALJ must also consider nonexertional limitations or impairments, including impairments that result in postural and manipulative limitations. *See* 20 C.F.R. § 404.1545(b), 20 C.F.R. Pt. 404, Subpt. P, Appendix 2, § 200.00(e).

The ALJ's "RFC determination is subject to the overarching requirement that [it] may only withstand judicial scrutiny if there is substantial evidence in the record to support each of its elements." *Crysler v. Astrue*, 563 F. Supp. 2d 418, 436 (N.D.N.Y. 2008); *see also Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997) (citations omitted). Additionally, the ALJ's RFC determination "must be set forth with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Ferraris*, 728 F.2d at 587 (citation omitted); *see also Perez v. Astrue*, 907 F. Supp. 2d 266, 273 (N.D.N.Y. 2012) (quotation omitted).

A review of the record demonstrates that there is substantial evidence to support the ALJ's RFC determination. The ALJ determined that Plaintiff had the RFC to perform light work

except occasional overhead reaching with her left upper extremity. *See* AR at 15. The regulations define light work as

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls. . . . If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

In performing his function-by-function analysis of Plaintiff's capabilities, the ALJ found that, although Plaintiff's condition limited her ability to lift or carry twenty pounds occasionally and ten pounds frequently, she could sit six hours in an eight hour work day, stand or walk six hours in an eight hour work day, and occasionally reach overhead with her left upper extremity, with no limits on the use of her dominant right hand. *See* AR at 18. This assessment is consistent with the definition of light work, the objective medical evidence, and the opinion evidence that the ALJ afforded great weight.

In December 2009, Dr. Goodman opined that Plaintiff could perform sedentary work and some light work that did not involve lifting or raising her left arm above shoulder level or repetitive or forceful motion involving her left arm. *See* AR at 14, 18, 287. Additionally, the ALJ appropriately afforded Dr. Goodman's December 2009 opinion great weight because it was supported by his examinations and consistent with Plaintiff's activities of daily living. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4) (stating that the more consistent an opinion is with the record as a whole, the more weight it deserves).

Additionally, Dr. Putcha's conclusion that Plaintiff was not able to return to her past work but might be able to do other work that allowed for limited use of her left arm and hand, *see* AR at 14, 18, supports the ALJ's RFC assessment. The ALJ correctly afforded this assessment great weight because it was supported by Dr. Putcha's examination findings and was consistent with other medical evidence in the record. Lastly, Dr. Soden-Serjanej noted that Plaintiff had normal gait and station; 5/5 strength in her upper and lower extremities bilaterally, stable joints, and no effusion; and was neurologically intact with no motor or sensory deficits and no muscle atrophy. *See* AR at 338, 340. The ALJ's RFC determination is consistent with this opinion, and the ALJ reasonably relied on Dr. Soden-Serjanej's opinion because of the objective results of her examination. *See Monguer*, 722 F.2d at 1039.

For all these reasons, the Court finds that there is substantial evidence in the record to support the ALJ's RFC determination.

**D.    Whether the ALJ properly assessed Plaintiff's credibility**

It is the function of the ALJ, and not the court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (citing *Richardson v. Perales*, 402 U.S. at 399, 91 S. Ct. at 1426) (other citations omitted). Although the ALJ need not resolve every conflict in the record, "'the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence.'" *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citing *Treadwell v. Schweiker*, 698 F.2d 137, 142 (2d

Cir. 1983))) (other citations omitted).

"The claimant's subjective complaints are an important element of the RFC calculus[.]" *Cornell v. Astrue*, 764 F. Supp. 2d 381, 399 (N.D.N.Y. 2010) (citing *Lewis v. Apfel*, 62 F. Supp. 648, 657-58 (N.D.N.Y. 1999)); *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984) (citation omitted). However, "[s]ubjective symptomatology by itself cannot be the basis for a finding of disability." *Knighton v. Astrue*, 861 F. Supp. 2d 59, 68 (N.D.N.Y. 2012). A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptoms alleged. *See* 42 U.S.C. §§ 423(d)(5)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p, 1996 WL 374186 (July 2, 1996); *Gernavage v. Shalala*, 882 F. Supp. 1413, 1420 n.7 (S.D.N.Y. 1995).

Although an ALJ "is required to take the claimant's reports of pain and other limitations into account," he is "not require[d] to accept the claimant's subjective complaints without question[.]" *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Id.* (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)); *Mimms*, 750 F.2d at 186 (quotation omitted). If the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief and whether there is substantial evidence to support his determination. *See Tome v. Schweiker*, 724 F.2d 711, 713 (8th Cir. 1984); *Valente*, 733 F.2d at 1045 (citations omitted). The ALJ may also find a claimant's statements, such as statements about the extent of functional limitations or restrictions due to pain or other symptoms, to be credible to a certain degree. *See*

SSR 96-7p, 1996 WL 374186, at *1.

In determining the credibility of the claimant's statements, the ALJ must consider the entire record, including the objective medical evidence, the claimant's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the claimant, and any other relevant evidence in the record. *See id.* However, it is not "require[d] that [the ALJ] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (*per curiam*) (citation omitted); *see also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (rejecting the argument that the ALJ must explicitly reconcile every shred of conflicting testimony); *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (stating that "'an ALJ is not required to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered'" (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000))).

One strong indicator of the claimant's credibility is its consistency, both internally and with other information in the record. *See* SSR 96-7p, 1996 WL 374186, at *1. The ALJ must consider such factors as the degree to which the claimant's statements are consistent with the objective medical evidence, the consistency of the claimant's own statements, and the consistency of the claimant's statements with other information in the record. *See id.* However, lack of consistency between a claimant's statements and other statements that she has made at other times does not necessarily mean that the claimant's statements are not credible. *See id.*

Symptoms may vary in their intensity, persistence, and functional effects, or may worsen

or improve with time, and this may explain why the claimant does not always assert the same intensity, persistence, or functional effects of her symptoms. *See id.* Therefore, the ALJ must review the record to determine if there are any explanations for any variations in the claimant's statements about her symptoms and their effects. *See id.*

The regulations establish a two-step procedure for evaluating a claimant's contentions of disability symptoms. *See* 20 C.F.R. § 404.1529(c). First, the ALJ must determine whether the claimant suffers from a "medically determinable impairment [] that could reasonably be expected to produce" the level of pain or symptoms alleged. *Id.*; *see also* SSR 96-7p, 1996 WL 374186, at *1. Second, the ALJ must evaluate the intensity and persistence of the symptoms experienced, considering all of the available evidence and, in the event that the claimant's testimony about her pain is not substantiated by objective medical evidence, must engage in a credibility analysis. *See* 20 C.F.R. § 1529(c)(3); *Meadors v. Astrue*, 370 F. App'x 179, 183-84 (2d Cir. 2010). In making that assessment, the ALJ must consider seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms; (5) other treatment the claimant receives or has received for relief of her pain or other symptoms; (6) other measures the claimant uses or has used to relieve her pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions resulting from her pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii); *Meadors*, 370 F. App'x at 186 n.1.

In this case, the ALJ properly assessed Plaintiff's credibility. In determining that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms

were not credible in relation to her RFC, the ALJ relied on the medical findings and Plaintiff's admissions and activities. *See* AR at 14-18. Although Plaintiff contends that the ALJ failed to point to specific evidence in the record that contradicts her complaints of pain, *see* Dkt. No. 8, Plaintiff's Brief at 10, a review of the ALJ's decision shows that the ALJ drew upon specific medical evidence to support his credibility determination. Ultimately, the ALJ noted that the medical records did not provide a basis to support the level of severity that Plaintiff alleged. *See* AR at 18. Despite Plaintiff's testimony that a second knee surgery had been scheduled, *see id.* at 36, the ALJ noted that there was no evidence of muscle atrophy, abnormal gait and mobility, or joint instability. *See id.* at 18, 253, 155-56, 338, 340, 355-56, 365, 370, 408. Moreover, Dr. Soden-Serjanej observed that Plaintiff did not use an assistive device, needed no assistance getting on and off the examination table, and was able to rise from the chair without difficulty. *See id.* at 19, 338.

Concerning Plaintiff's left upper extremity, the ALJ noted that Plaintiff was neurologically intact. *See id.* at 18, 235, 256, 272-73, 317, 323, 340, 365-66. Additionally, Dr. Soden-Serjanej concluded that Plaintiff's hand and finger dexterity was intact and grip strength was 5/5 bilaterally. *See id.* at 340. X-rays of Plaintiff's left shoulder, left elbow, left humerus and cervical spine were normal; an MRI of the cervical spine showed no clear evidence of major pathology; and an MRI of her left shoulder showed some early mild degenerative change in the AC joint without any significant underlying impingement and no evidence of rotator cuff tear. *See id.* at 14-15, 230-33, 243, 254, 278, 291.

Additionally, the ALJ noted a January 2009 emergency room report in which the attending physician reported that Plaintiff used her left arm to sit up and push off the stretcher

without difficulty, showed active range of motion that, while less than full, was more than she had done during the actual examination. *See id.* at 15, 18, 235. The ALJ also saw Plaintiff use her left arm to push up on her chair during the hearing. *See id.* at 18.[2]

Lastly, the ALJ noted that Plaintiff's activities of daily living did not support her allegations of severity and that she was able to make some use of her arm. *See* AR at 18. Plaintiff reported that she was able to tend to her personal grooming independently, prepare meals, drive, perform household cleaning, go out alone, shop, and help get her children ready for school. *See id.* at 17-18, 33-34, 163-66, 338.

For all the above-stated reasons, the Court finds that the ALJ properly evaluated Plaintiff's subjective complaints about the intensity, frequency, and duration of her impairments in the context of the existing medical evidence and other evidence in the record and that there is substantial evidence in the record to support the ALJ's findings with respect to Plaintiff's credibility.

**E.      Whether the ALJ correctly determined that there were jobs in the national economy that Plaintiff could perform**

If an ALJ determines that a claimant cannot perform past relevant work, he turns to the

---

[2] The regulations specifically provide that "observations by [Social Security Administration] employees and other persons" will be treated as evidence. 20 C.F.R. § 416.929(c)(3). In addition, the rule interpreting 20 C.F.R. § 416.929(c)(3) instructs ALJs that, "[i]n instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." SSR 96-7p, 1996 WL 374186, at *5. Although such observations should be assigned only limited weight, there is no *per se* legal error where the ALJ considers physical demeanor as one of several factors in evaluating credibility. *See Schaal*, 134 F.3d at 502.

Medical-Vocational Guidelines ("Grids") to determine whether the claimant can perform other jobs that exist in the national economy based on the claimant's RFC, age, education and experience. *See* 20 C.F.R. Pt. 404, Subpt. P, Appendix 2. The Second Circuit has held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert or preclude reliance" on the grids. *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986). The testimony of a vocational expert that jobs exist in the national economy that a claimant can obtain and perform is required only when "a claimant's nonexertional impairments significantly diminish his ability to work – over and above any incapacity caused solely from exertional limitations – so that he is unable to perform the full range of employment indicated by the medical vocational guidelines[.]" *Id.* "Significantly diminish" means the "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id.* at 606 (footnote omitted). Thus, exclusive reliance on the Grids will be deemed inappropriate only where the nonexertional impairments "'significantly limit the range of work permitted by his exertional limitations.'" *Id.* at 605 (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983) (*per curiam*)). Accordingly, the ALJ must determine on a case-by-case basis the application of the grid guidelines and the necessity for expert testimony. *See id.* at 605.

Nonexertional limitations or restrictions are those that a claimant's impairments impose that affect her ability to meet the demands of jobs other than strength demands. *See* 20 C.F.R. §§ 404.1569a(a), 404.1569a(c)(1). In this case, the ALJ noted that Plaintiff had a nonexertional restriction of occasional overhead reaching with the left upper extremity. *See* AR at 14. Pain is also considered a nonexertional limitation. *See* 20 C.F.R. § 404.1569a(c)(1).

Plaintiff contends, however, that language barriers and lack of education are nonexertional impairments. *See* Dkt. No. 8, Plaintiff's Brief at 12-13. Accordingly, she asserts that the presence of any nonexertional impairment mandates the use of a vocational expert. *See id.* at 12 (citing *Klein*, 639 F.2d at 564-65).[3] The Court disagrees. First, the case on which Plaintiff relies for this argument is inconsistent with Second Circuit precedent. *Compare Cline v. Sullivan*, 939 F.2d 560, 564-65 (8th Cir. 1991) (stating that "the medical-vocational guidelines may not be utilized to fulfill the [Commissioner's] burden of proof where a claimant suffers from nonexertional impairments such as pain") *with Bapp*, 802 F.2d at 605 (holding that the use of a vocational expert should be determined on a case-by-case basis and should be used when a plaintiff's nonexertional impairment significantly limit the range of work permitted by their exertional limitations). Second, education and language skills are considered vocational factors rather than impairments. *See* 20 C.F.R. §§ 404.1564(b), 416.964(b). These vocational factors are included in the Medical-Vocational guidelines; therefore, the testimony of a vocational expert was not necessary. *See* 20 C.F.R. Pt. 404, Subpt. P, Appendix 2, § 202.00.

Based on the evidence in the record, the ALJ properly found that Plaintiff's nonexertional limitation of pain had little or no effect on the occupational base of unskilled light work. Despite recognizing Plaintiff's complaints of pain, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible in relation to her RFC. *See* AR at 14. Additionally, there was substantial evidence to support the ALJ's RFC determination. In addition, in light of the evidence in the administrative record, the ALJ properly found that Plaintiff's nonexertional restriction of occasional overhead reaching

---

[3] The correct citation for this case is *Cline v. Sullivan*, 939 F.2d 560 (8th Cir. 1991).

with her nondominant upper left extremity had little or no effect on the occupational base of unskilled light work.

Since there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's nonexertional limitations do not significantly affect her ability to do light work, the Court concludes that the ALJ's conclusion was not in error.

## IV. CONCLUSION

After reviewing the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED** and Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: March 31, 2014
Syracuse, New York

Frederick J. Scullin, Jr.
Senior U.S. District Judge